*501 Opinion of
the Court.
ON the 5th day of December 1818, John Overall, having procured one of his neighbors to write his will, signed and acknowledged it in the presence of two witnesses, who attested it in his presence. On the 16th of the same month, he sent for the same neighbor, and caused him to write, on the same paper, words to the following effect:
“ I do hereby establish and confirm the within instrument of writing, to be my last will and testament, and do hereby appoint Benjamin Irvin and my son Whitledge to be my lawful executors, with full power to execute the same according to its true intent and mean *502 ing. Witness my hand and seal, this 16th day of December, 1816."
The English statute on this subject and ours, are substantially the same.
And will legally attested by two witnesses, may be proved by one.
This he subscribed, and the same neighbor attested it, who had likewise attested the original will. On the 16th of March 1821, he procured the same neighbor to Write’ on the same as follows:
“ Whereas it has pleased a merciful God to prolong my life until this period, and as my son Thomas, and daughter Sally, have died since I made this my will, as within specified, their children are to have the two-ninths of the personal estate which now belongs to me, by a fair and equal distribution; but my executors, are hereby cautioned to put no part or species of my property into the hands of Leonard Burch, who was Sally’s husband, nor Darbey Yardeman, who was wife to my son Thomas, as their recent conduct has been such as to forfeit my esteem and confidence. And whereas Benjamin Irvin, who I had appointed my executor, to act in concert with my son Whitledge, is about to move to the Indiana territory, I do hereby appoint William F, Hilton, in the room of, and to supersede the said Benjamin Irvin, as my lawful executor, to act in concert with my son Whitledge.
“ From this day, I declare old Nell to be free, and fairly emancipated from any future bondage to me or my children.”
This appears to be signed and sealed by the testator, and attested by three witnesses, one of whom is the same who had written the original will, and another is William F. Hilton, named as executor in the codicil. This last codicil was admitted to record in the court of the county where the testator resided at his death; but the original was rejected by the decision of that court, and from that decision this appeal has been prayed.
Of the sanity of the testator at the time of making both will and codicil, although he was an old man, there is no question, from the testimony; but to the original will only one subscribing witness is produced, the neighbor who wrote the will and the codicil, the other being now a resident of Indiana, and not amenable to the process of this court, and also interested by marriage in the destruction of the will. The subscribing witness produced, has proved in this court, that the testator signed and acknowledged the original will, *503 after he was fully acquainted with its contents, and that he and the other subscribing witness, who is absent, attested the same in the presence of the testator, and at his request, and in the presence of each other; and his evidence is perfectly satisfactory, as to the capacity of the testator at the time.
2 Marsh. 229 and 465,
It has been decided by this court, in the cases of M'Cormack vs. Lindsay, and White and others vs. Harper and others, that this proof by one Witness is sufficient to entitle the will to record, and to be used in evidence as a recorded instrument. For although two witnesses are necessary to attest the will, by our act regulating wills, yet the act does not require that both shall be produced, to prove the fact; and if one shall prove that the requisites of the statute were complied with at the making of the will, the other being inaccessible at the time of its probat, yet the will ought not, for that cause, to be rejected. These decisions might be considered as conclusively determining this will to be valid, even as to real estate, were it not for another fact disclosed by the evidence.
The writer of the will has deposed, that at the time he wrote the original will, no mention was made by the testator, of the death of his son and daughter, declared by the codicil to be dead; that when he had written the codicil, and read it to the testator, (and in these facts all the witnesses to the codicil agree,) the testator observed, that the expressions of the codicil, declaring that his son and daughter had died since he had made his original will, were wrong, and that their death was before the date of the will. The writer then expressed a wish that he had known that matter before, for it would now cause him to write tie whole will and codicil over again. Some one of the witnesses then proposed the expedient of changing the date of the original will, and antedating it so far back as to overreach the death of the son and daughter. This was agreed to by the testator, and the change was made by one of the witnesses, in his presence; altering the date of the year from 1818 to 1816. The whole will and codicils were then read over to the testator, and approved by him, and he signed and acknowledged the codicil, and the three witnesses attested it, as this law requires. This change in the date of the will has been found to make it incompatible with the real his *504 tory of the testator’s estate; for the original will makes mention of a house which did not exist in 1816, but which was built between that period and 1818, which has been mentioned at the bar as an evidence of fraud; but after all the facts have been disclosed by the testimony of unimpeachable witnesses, that circumstance has been justly abandoned in argument. It has, however, been ¡contended, that this alteration destroys the proof of the original will, and that although one witness can prove both the original will and the alteration, yet the other, if produced, not having been present at the alteration and writing of the codicil, could not now prove the original will; and that, of course, it is no longer a will attested according to the statute.
2 Dig. 1242.
It may be matter of some doubt, whether the execution and attestation of the codicil, under the circumstances of this case, ought not to be considered as a publication of the original will and codicils, in its new form, as one will. On this point the authorities are not altogether reconcileable, and are far from being satisfactory. We have not, however, deemed it necessary to decide this question; for we are of opinion that the erasure and changing, in this instance, does not destroy the original will. Independent of other authority, the act regulating wills, declares, that “no devise so made, or any clause thereof, shall be revocable, but by the testator or testatrix obliterating the same, or causing it to be done in his or her presence, or by a subsequent will, codicil or declaration in writing, made as aforesaid.” Thus, the devise itself, or some clause of it, must be obliterated, before it is affected. The change, in this instance, was not of any devise, or clause of a devise, but only in the date of the testator’s signature, under an innocent mistake of both witnesses and testator, and the will itself remains as it did. The statute of Great Britain is not literally, (with respect to such changes and erasures,) but is substantially the same with ours; and under it, the British courts have declared that such revocations were equivocal, and that an inquiry might be made into the intention with which the act was done; and if the animus revocandi did not appear, the residue of the will, not obliterated, would be sustained. The same principle ought to apply to our own act of assembly, and cases under it.
*505 When the rule is applied to this case, the intention of revoking, in the testator, was not only wanting, but there was an evident intention to ratify and confirm, and merely a disposition manifested to cause the will to read according to the history of events in his family.
Judgment of the county court reversed, and original will established.